**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DANIELLE ANDERSON, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 16 cv 1632 |
| FORD MOTOR COMPANY, a Delaware corporation, ) ) ) ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.      Plaintiff Danielle Anderson ("Plaintiff") brings this action for herself and on behalf of all persons in the United States who purchased or leased any vehicle designed, manufactured, marketed, distributed, sold, warranted, and serviced by Ford Motor Company ("Ford" or "Defendant") and equipped with Ford's PowerShift dual clutch transmission ("PowerShift Transmission") (collectively, "Class Vehicles").

2.      Plaintiff is informed and believes, and based thereon alleges, that the PowerShift Transmission is defective in its design and/or manufacture in that, among other problems, the transmission slips, bucks, kicks, jerks, gets hot, stutters, harshly engages, and has premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle, which eventually leads to transmission failure (the "Transmission Defect").

3.      Ford has never publicly acknowledged or admitted that the Transmission Defect even exists. To the contrary, Ford actively concealed the Transmission Defect by, among other things, telling customers that the symptoms associated with the Transmission Defect were

"normal driving conditions" and that nothing was wrong. Ford issued multiple Technical Service Bulletins ("TSBs") to dealers but never directly notified customers of known problems with the PowerShift Transmission. Ford further perpetuated the cover-up by eventually issuing two "Customer Satisfaction Programs" that simply offered additional ineffectual repairs without disclosing the truth about the Transmission Defect to the public. Customers whose vehicles were supposedly repaired have continued to experience the Transmission Defect.

4. None of the information made available to the public regarding the Transmission Defect disclosed, fully or in part, the material facts known only to Ford that the PowerShift Transmission had serious flaws since the start of its development, that Ford was unable or unwilling to fix the Defect, and that the Defect rendered the Class Vehicles unsafe to drive. The PowerShift Transmission was a new technology that Ford rushed to the market without disclosing to Plaintiff and the Class members the PowerShift Transmission's known problems, as described above. Ford should have disclosed the problems with the transmission in, among other places, a Disclosure Sheet or similar document presented to all customers at the time of purchase advising them of known problems with the PowerShift Transmission so that Plaintiff and the Class could make informed purchasing decisions regarding their vehicles.

5. Piecemeal statements in the market regarding the PowerShift Transmission do not excuse Ford's failure to disclose. Only Ford knew the full truth and had all the facts regarding the Transmission Defect. It was Ford's obligation to disclose the material facts that only Ford knew.

6. This defect poses a serious safety issue. Many Class members have complained of their vehicles lurching into or losing power in traffic.

7.      In 2010, Ford knew of the Transmission Defect and began issuing TSBs to its dealers in an effort to address the issue.  However, Ford never provided the TSBs, or the information they contained, directly to the Class.  Instead, Ford prepared a separate series of intentionally misleading documents for its customers to lead them to believe that the Transmission Defects in the Class Vehicles were "normal driving conditions."

8.      The problems plaguing the PowerShift Transmission cannot be attributed to "normal driving conditions."  Such characteristics belie the fact that, on information and belief, Ford has replaced hundreds, if not thousands, of Class members' PowerShift Transmissions due to transmission failure.

9.      The vast majority of Class members did not receive such a replacement, however, and, even if they did, the replacement transmissions are likewise defective.  Usually, when owners of Class Vehicle exhibiting the Transmission Defect bring their vehicle to a Ford dealership for repair, the Ford dealerships advise the Class members that their vehicles are operating normally.  Ford does not disclose, and has not disclosed, that the transmission is defective or that the PowerShift Transmission is unsafe.

10.      Ford dealerships occasionally provide "software flashes" to Class members whose vehicles are exhibiting the Transmission Defect.  These "software flashes" are ineffective, and Class members are forced to return to the dealerships, often multiple times, with the same transmission issues.  Class members who receive multiple "software flashes" are told that their vehicles are operating normally.

11.      Ford dealerships occasionally perform repairs or replace to the clutch components in the PowerShift Transmission, but those repairs are ineffective.

12.     This issue is so prevalent that Ford issued a handout for its dealers entitled "PowerShift 6-Speed Transmission Operating Characteristics."  Ford made this document and provided it to dealers to give to customers whose vehicles were displaying the Transmission Defect in an apparent attempt to get customers to believe the problems they were experiencing were "normal driving conditions."  Nothing in this handout discloses that the PowerShift Transmission is defective.

13.     In August 2014, Ford released a "Customer Satisfaction Program: Program Number 14M01," wherein Ford stated that Class Vehicles "may…exhibit excessive transmission shudder during light acceleration.  This condition may be caused by fluid contamination of the clutch due to leaking transmission seals."  However, Ford did not issue a recall or alert drivers of the safety risks associated with the known problems.  This program was issued to current owners only and not to prospective buyers.  Ford offered ineffective repairs, and owners who received this program continued to complain about the Transmission Defect since their vehicles were never effectively repaired.

14.     Ford's "Customer Satisfaction Program: Program Number 14M01" issuance was highly selective.  Despite Ford's knowledge, Ford did not disclose that the PowerShift Transmission was defective, and that the PowerShift Transmission exhibits overheating, stuttering, jerking, bucking, slipping, harsh engagement, premature internal wear, sudden acceleration, difficulty stopping, or transmission failure.

15.     In February 2015, Ford later released the "Customer Satisfaction Program: Program Number 14M02," informing the Class that their Class Vehicles may suffer from issues such as loss of transmission engagement, no-start, or a lack of power.  Ford blamed these issues on failures in the Transmission Control Module ("TCM").  Ford still did not issue a recall for the

continually faulty and unsafe PowerShift Transmission, and this information was only provided to current owners and not to prospective buyers. Ford offered more ineffective repairs, and owners who had this program continued to complain about the Transmission Defect since their vehicles were never actually repaired.

## PARTIES

16.     Plaintiff Danielle Anderson is an Illinois citizen who resides in Plainfield, Illinois.

17.     Defendant Ford Motor Company is a corporation organized and in existence under the laws of the State of Delaware and registered with the Illinois Secretary of State to conduct business in Illinois. Ford Motor Company's Corporate Headquarters is located at 1 American Road, Dearborn, Michigan 48126.

18.     Ford designs and manufactures motor vehicles, parts, and other products for sale in the United States and around the world. Ford is the warrantor and distributor of the Class Vehicles in Illinois.

19.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and vehicle components in Illinois.

## JURISDICTION AND VENUE

20.     This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21.     Venue properly lies in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391.

5

22.     In addition, Plaintiff resides in the Will County, Illinois, and the acts, omissions, and contractual performances alleged herein took place in Will County and DuPage County, Illinois, which are within the Northern District of Illinois.  Defendant does business in Will and DuPage counties, in Illinois.

## FACTUAL ALLEGATIONS

23.     Since 2010, Ford has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Ford has sold, directly or indirectly, through dealers and other retail outlets, hundreds of thousands of Class Vehicles equipped with the PowerShift Transmission in Illinois.

24.     Ford designed the Class Vehicles' transmissions in an effort to meet increased governmental and consumer expectations for fuel economy, performance, and efficiency.  Such a transmission should have the convenience of an automatic transmission without sacrificing the fuel efficiency and shift speed of a manual transmission.  In reality, however, Ford's PowerShift Transmission has been plagued by numerous problems and safety issues, rending the vehicle virtually inoperable and unsafe.

25.     Dating to at least 2010, Ford was aware of the defects of the PowerShift Transmission.  Ford, however, failed and refused to disclose these known defects to customers. As a result of this failure, Plaintiff and Class members have been damaged.

## BACKGROUND – POWERSHIFT TRANSMISSION

26.     The PowerShift Transmission is a $1,095 option for the Class Vehicles.

27.     The PowerShift Transmission was designed and marketed by Ford as an advanced and more fuel-efficient option compared to a traditional automatic or manual transmission.  It was the only automatic option offered by Ford in the Class Vehicles.

6

28.     Automatic transmissions offer increased convenience; however, they are less fuel-efficient and slower-shifting than manual transmissions.  Ford marketed the PowerShift Transmission as a beneficial combination, with the ease of operation of an automatic transmission with the fuel economy and shift speed of a manual transmission.

29.     Ford designed the Class Vehicles' PowerShift Transmissions in order to meet increased government and consumer expectations regarding fuel economy and efficiency. According to Ford, this new transmission would require no regular maintenance.

30.     Ford's PowerShift Transmission should have the best of both worlds with the combined elements of the automatic and manual transmissions.  However, in reality the problems with the transmission make the affected Class Vehicles unsafe to drive and virtually useless.

31.     The Transmission Defect causes unsafe driving conditions, including, but not limited to, stuttering, overheating, delayed acceleration and stopping, and lurching forward. These conditions present a safety concern because they severely limit a driver's ability to control the car's acceleration, speed, deceleration, and overall movement.

32.     The Transmission Defect causes premature internal wear to the transmission's various parts and components, which can result in premature transmission failure and lead to expensive repairs for Class members, including replacement of the transmission.

**THE TRANSMISSION DEFECT POSES AN UNREASONABLE SAFETY RISK**

33.     The Transmission Defect causes unsafe driving conditions in the Class Vehicles, including but not limited to, vehicles lurching forward, stuttering, delayed acceleration, and difficulty stopping.  These conditions present a safety issue because they severely hinder the driver's ability to control the vehicle's speed, acceleration, deceleration, and movement.

34.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with the Transmission Defect.  Complaints that owners and lessees filed with the National Highway Traffic Safety Administration ("NHTSA") demonstrate that the defect is widespread and dangerous and that it occurs without warning.  The complaints also indicate Defendant's awareness of the defect with the transmission and how potentially dangerous the defective condition is for customers.

35.     The Transmission Defect poses an unreasonable safety risk for Class members and the general public.  A vehicle's responsiveness to driver input and the ability of a vehicle's transmission to perform properly are crucial to a vehicle's safe operation.  A defect that causes one or more of these negative characteristics poses a safety risk and increases the risk of accidents.

## FORD'S KNOWLEDGE

36.     Beginning as early as 2010, Ford knew or should have known that the PowerShift Transmission was defective in its design and/or manufacture and that it negatively affected the operability of the Class Vehicles and caused potential safety issues.

37.     Prior to the sale of the Class Vehicles, Ford knew, or should have known, about the Transmission Defect through its extensive knowledge of confidential internal data about the Transmission Defect, including: pre-release testing data; consumer complaints about the Transmission Defect to Ford's dealerships that are responsible for vehicle repairs; communications from Ford's dealerships to Ford; warranty claims related to the Transmission Defect; consumer complaints to the NHTSA and the resulting notice from the NHTSA; TSBs related to the Class Vehicles; and other internal sources of relevant information about the problem.  Despite of the available aggregate information, Ford actively concealed and failed to

disclose the Transmission Defect to Plaintiff and Class members at the time of purchase or lease or any time thereafter.

38. Each Ford Fiesta and Ford Focus has the same or nearly identical PowerShift Transmission options, and the Transmission Defect is the same for each Class Vehicle.

39. As a result of the Transmission Defect, in 2010 and 2011 Ford issued several TSBs to its dealers in the United States, but not to consumers, acknowledging problems with the PowerShift Transmission. For example, Ford's TSB from April 2013, covering the 2011-13 Fiesta and 2012-13 Focus, informed dealers of concerns that the transmission "may exhibit an intermittent transmission clutch shudder on light acceleration from a stop."

40. Because Ford has failed to notify Class members that the PowerShift Transmission is defective, Plaintiff and Class members (as well as members of the general public) are subjected to dangerous driving conditions.

41. The Transmission Defect was inherent in each Class Vehicle's transmission and was present at the time of sale.

42. Ford knew about and concealed the Transmission Defect present in every Class Vehicle, along with the dangerous safety and operability issues, from Plaintiff and Class members, at the time of sale, lease, repair and thereafter. Instead of repairing the defects in the transmission, Ford either refused to acknowledge the defect existed or performed ineffective software upgrades or other ineffectual repairs that did nothing to solve the problem.

43. If Plaintiff and Class members had known about the Transmission Defect at the time of sale or lease, Plaintiff and Class members would not have purchased or leased the Class Vehicles or would have paid less for them.

44.    As a result of their reliance on Ford's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles, including but not limited to, the $1,095 cost of the optional PowerShift Transmission and out-of-pocket costs related to repairs to the PowerShift Transmission.  Additionally, as a result of the Transmission Defect, Plaintiff and Class members were harmed and suffered actual damages in that the Class Vehicles' transmissions are reasonably certain to fail before their life expectancy has run out.  Plaintiff also seeks injunctive relief in the form of extended warranties and effective repair or replacement for all Class Vehicles.

**FORD HAS EXCLUSIVE KNOWLEDGE OF THE TRANSMISSION DEFECT**

45.    Ford had exclusive and superior knowledge of the transmission defect and knew or should have known that the defect was not known or easily discoverable by Plaintiff and Class members before they purchased or leased the Class Vehicles.

46.    Before Plaintiff purchased her vehicle, and since at least 2010, Ford knew about the Transmission Defect through sources not available to consumers, including: pre-release testing data; consumer complaints about the Transmission Defect to Ford's dealers who are in charge of vehicle repairs; warranty claim data related to the defect; consumer complaints to the NHTSA and the resulting notice from the NHTSA; TSBs related to the Class Vehicles; and other internal sources of information about the issue.

47.    Only Ford had access to its pre-release testing data, data from Ford's dealers, and other internal sources of information about the problem.  Ford did not make any of this information available to consumers, and consumers had no way to access it.

48.     The Transmission Defect was inherent and present in every Class Vehicles' PowerShift Transmission at the time of sale.

49.     The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle that was equipped with a PowerShift Transmission.  Had Plaintiff and other Class members known that the Class Vehicles were equipped with defective transmissions, they would not have purchased or leased the Class Vehicles equipped with the PowerShift Transmissions or would have paid substantially less for the Class Vehicle.

50.     Irrespective of all the combined information, both internal and external, that clearly put Ford on notice that the PowerShift Transmission is severely defective, Ford has never disclosed to owners or prospective buyers that there is a safety issue in the Class Vehicles. Instead, Ford intentionally and actively concealed the existence of a safety defect in the Class Vehicles.

51.     Reasonable consumers, like Plaintiff, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects.  Plaintiff and Class members further reasonably expect that Ford will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will disclose any such defects to its customers when it learns of them.  Plaintiff and the Class members did not expect Ford to fail to disclose the Transmission Defect to them and to continually deny that the defect existed.

**FORD'S COMMUNICATIONS AND SERVICE BULLETINS**

52.     In 2010, Ford knew about the Transmission Defect and began to issue TSBs in an effort to address it.  However, Ford never communicated the TSBs, or the information they contained, directly to the Class members or prospective buyers.  Instead, Ford produced a

11

separate series of documents for customers intended to lead them to believe that their problems with their vehicles were "normal driving characteristics."

53.     When Class members with vehicles exhibiting the Transmission Defect brought their vehicles to Ford dealers, the dealer often provided Class members with a document entitled "PowerShift 6-Speed Transmission Operating Characteristics." Ford drafted this document and provided it to dealers to give to customers whose vehicles were exhibiting the Transmission Defect in an attempt to lead customers to believe that the problems were "normal driving characteristics." Ford did not disclose in this document that the transmission was defective.

54.     When customers brought the Class Vehicles to a Ford dealer in order to repair the transmission, rather than repair the problem under warranty, Ford dealers either informed customers that their vehicles were operating properly or conducted ineffective repairs and/or software upgrades that delayed the inevitable transmission failure caused by the defect. Ford declined to repair the Transmission Defect in the Class Vehicles so that it would not to have to pay for repairs under warranty.

55.     Ford induced Plaintiff and Class members to spend money to diagnose, repair, or replace the Class Vehicles' transmissions, despite Ford's knowledge of the Transmission Defect.

**FORD ACTIVELY CONEALED THE TRANSMISSION DEFECT**

56.     While Ford has been fully aware of the Transmission Defect in the Class Vehicles, it actively concealed the existence and nature of the defect from Plaintiff and Class members at the time of purchase, lease, or repair and thereafter. Ford failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

    a.      Any and all known material defects or material nonconformity of
            the Class Vehicles, including the defects relating to the PowerShift
            Transmission;

12

      b.      That the Class Vehicles, including their PowerShift Transmissions, were not in good working order, were defective, and were not fit for their intended purposes; and

      c.      That Ford learned of such defects through numerous transmission failures, customer complaints, and other internal sources, as early as 2010.

57.     Ford further actively concealed the material facts that the PowerShift Transmission was unsafe, that it would function in a manner that would pose a safety risk, and that it was defective. Instead, Ford sold vehicles with a known safety defect, and failed to disclose this defect to consumers when Ford learned about it.

## FACTS RELATING TO PLAINTIFF

58.     On or about April 26, 2014, Plaintiff purchased a new 2014 Ford Fiesta from Packey Webb Ford of Downers Grove, an authorized Ford Dealer in DuPage County, Illinois. Her vehicle was equipped with an optional PowerShift Transmission that cost her $1,095.

59.     Plaintiff purchased this vehicle primarily for personal, family, or household use. Ford manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

60.     Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase her vehicle. Prior to purchasing her Class Vehicle, Plaintiff reviewed Ford's official website in order to research Fiesta options and features. Ford's omissions were material to Plaintiff's decision to purchase a new 2014 Ford Fiesta.

61.     Had Ford disclosed its knowledge of the Transmission Defect, and the fact that it posed a potential safety risk, when Plaintiff purchased her 2014 Ford Fiesta, Plaintiff would have seen such disclosures and been aware of them. Plaintiff would not have purchased her 2014 Ford Fiesta, or would not have paid the purchase price charged by Ford, had she known that the

PowerShift Transmission is prone to premature internal wear and failure, suffers from stuttering, transmission slips, jerking, sudden acceleration, delay in downshifts, and difficulty stopping.

62.     Plaintiff's vehicle has exhibited all of the problems associated with the Transmission Defect.

63.     On June 15, 2015, Plaintiff took her vehicle to Rod Baker Ford of Plainfield, Illinois, an authorized Ford Dealer in Will County, Illinois to repair the Transmission Defect. The Ford dealership attempted to repair Plaintiff's vehicle according to Ford TSBs.

64.     The attempted repairs failed to effectively fix Plaintiff's vehicle, and despite these repair attempts by Ford and its dealers, the Transmission Defect in Plaintiff's vehicle persists.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

66.     The Class and Sub-Classes are defined as:

> **Nationwide Class:** All individuals in the United States who purchased or leased any 2011 through 2015 Ford Fiesta or any 2011 through 2015 Ford Focus vehicle equipped with a PowerShift Transmission.

> **Illinois Subclass:** All members of the Nationwide Class who reside in the State of Illinois.

> **ICFA Subclass:** All members of the Illinois Sub-Class who are "consumers" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act § 1(e).

> **Implied Warranty Subclass:** All members of the Nationwide Class who purchased or leased their vehicles in the State of Illinois.

14

67.     Excluded from the Class and Subclasses are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned, the Judge's staff, and their immediate families; (3) any Judge sitting in the presiding court system who may hear an appeal of any judgment entered, and his/her immediate family; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

68.     There is a well-defined community of interest in the litigation and each sub-class is readily ascertainable.

69.     Numerosity: Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court.  The Class members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

70.     Typicality: Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Ford, and equipped with a PowerShift Transmission.  The representative Plaintiff, like all Class members, has been damaged by Defendant's misconduct in that she has incurred or will incur the cost of repairing or replacing the defective transmission.  Additionally, the factual bases of Ford's misconduct are common to all Class members and represent a common thread resulting in injury to all Class members.

15

71.     <u>Commonality:</u> There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class members. These common legal and factual issues include the following:

a.      Whether Class Vehicles contain defects relating to the PowerShift Transmission;

b.      Whether the defects relating to the PowerShift Transmission constitute an unreasonable safety risk;

c.      Whether Defendant knew or reasonably should have known about the defects relating to the PowerShift Transmission and, if so, how long Defendant has known or should have known of the defect;

d.      Whether the defective nature of the PowerShift Transmission constitutes a material fact;

e.      Whether Defendant has a duty to disclose the defective nature of the PowerShift Transmission to Plaintiff and Class members;

f.      Whether Defendant made fraudulent misrepresentations or omissions with the intent to mislead Plaintiff and Class members;

g.      Whether Defendant violated the Illinois Consumer Fraud and Deceptive Fair Practices Act, 815 ILCS 505/1, *et seq.*;

h.      Whether Defendant breached the implied warranty of merchantability pursuant to the Uniform Commercial Code, 810 ILCS 5/2-314;

i.      Whether Defendant breached express warranties pursuant to the Uniform Commercial Code, 810 ILCS 5/2-313;

j.      Whether Defendant was unjustly enriched by its conduct; and

k.      Whether Defendant fraudulently concealed defects relating to the PowerShift Transmission from Plaintiff and Class members.

72.     <u>Adequate Representation:</u> Plaintiff will fairly and adequately protect the interests of the Class members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

16

73.     <u>Predominance and Superiority:</u> Plaintiff and Class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.   Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.   Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Defendant's misconduct.   Absent a class action, Class members will continue to incur damages, and Defendant's misconduct will continue without remedy.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

74.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

a.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant;

b.      The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.      Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory class-wide basis.

75.     Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## STATUTE OF LIMITATIONS

76.     Since the defect is undetectable until it appears and Ford failed to disclose or intentionally concealed the existence of the Transmission Defect, Plaintiff and Class members were not reasonably able to discover the problem until after purchasing the Class Vehicles, despite the exercise of due diligence.

77.     Additionally, Ford instructed its dealers and technicians to inform Class members that the occurrence of the Transmission Defect in their PowerShift Transmission was normal and not a defect.

78.     Plaintiff and Class members had no reasonable ability to learn that the PowerShift Transmission in Class Vehicles was defective.  Therefore, the discovery rule applies to the claims alleged by Plaintiff and Class members.

79.     Ford knew about the Transmission Defect since at least 2010 and has concealed from or failed to notify owners of the Class Vehicles of the defective nature of the PowerShift Transmission.

80.     Any applicable statute of limitation has therefore been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein.  Defendant is further barred from relying on any statute of limitation because of its failure to acknowledge the defect.

**FIRST CAUSE OF ACTION**
**(Violation of Illinois' Consumer Fraud and Deceptive Business Practices Act)**
**(On behalf of the Illinois and ICFA Subclasses)**
**(815 ILCS 505/1, *et seq.*)**

81.     Plaintiff repeats and realleges paragraphs one (1) through eighty (80), with the same force and effect as though fully set forth herein.

82.     Plaintiff brings this cause of action individually and on behalf of the ICFA Sub-Class, for Defendant's violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

83.     Defendant is a "person" as defined by ICFA § 505/1(c).

84.     Plaintiff and Class members are "consumers" within the meaning of ICFA § 505/1(e) because they purchased their Class Vehicles primarily for personal, family, or household use.

85.     Beginning as early as 2010, Ford knew or should have known that the PowerShift Transmission was defective in its design and/or manufacture and that it negatively affected the operability of the Class Vehicles and caused potential safety issues.  Defendant knew the Class Vehicles suffered from an inherent Transmission Defect, were defectively designed or manufactured, and were not suitable for their intended use.

86.     Ford knew about, failed to disclose, and actively concealed the Transmission Defect present in every Class Vehicle, along with the dangerous safety and operability issues, from Plaintiff and Class members, at the time of sale, lease, repair and thereafter.

87.     Defendant engaged in deceptive and unfair acts and practices by concealing and failing to disclose the defective nature of the PowerShift Transmissions from Plaintiff and Class members.  Defendant's conduct violated Chapter 2 of the ICFA, as it represented that the Class

19

Vehicles and their transmissions had characteristics that they do not have, willfully concealed the defect, and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

88.    In failing to disclose the defective transmissions, Defendant knowingly and intentionally concealed the material facts and breached its duty to disclose such information to Plaintiff and Class members.

89.    Defendant intended that Plaintiff and Class members rely on Defendant's misrepresentations and omissions regard the Transmission Defect and cost to repair the defect.

90.    The facts Defendant concealed from, or failed to disclose to, Plaintiff and the Class members are material because a reasonable consumer would consider them important factors in deciding whether to purchase or lease the Class Vehicles or to pay substantially less for such vehicles.  Had Plaintiff and Class members known about the Transmission Defect, they would have not purchased or leased the Class Vehicles, or would have substantially paid less for the vehicle.

91.    Defendant's conduct was unfair because it is contrary to public policy.  All of the facts and information regarding the PowerShift Transmission and Transmission Defect were in Defendant's control.    Defendant's misrepresentations and omissions denied consumers, including Plaintiff and Class members, of important knowledge about their vehicles to which they were entitled as the rightful owners.

92.    Plaintiff and the Class members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit transmission defects. This is a reasonable consumer expectation regarding transmissions.

20

93.     The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce.

94.     As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff and Class members suffered and will continue to suffer actual damages because the transmission defects occurred and will continue to occur, eventually leading to premature transmission failure. Owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles as the Class Vehicles' transmissions are certain to fail prematurely.

95.     Plaintiff and Class members are entitled to equitable relief.

**SECOND CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability)**
**(On behalf of the Illinois and Implied Warranty Subclasses)**
**(Illinois Commercial Code, § 2-314, *et seq.*)**

96.     Plaintiff repeats and realleges paragraphs one (1) through eighty (80), with the same force and effect as though fully set forth herein.

97.     Plaintiff brings this cause of action individually and on behalf of the Implied Warranty Sub-Class.

98.     Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or should have known of the particular use for which the Class Vehicles were purchased or leased.

99.     Defendant provided Plaintiff and Class members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

100.     Plaintiff and Class members were in privity with Defendant as Plaintiff and Class members purchased and/or leased the Class Vehicles from Defendant through Defendant's authorized Ford dealerships.

101.     The Class Vehicles are not fit for their ordinary purposes of providing reliable and safe transportation because the Class Vehicles and their transmissions suffered from an inherent defect at the time of sale and thereafter.

102.     Defendant, through its authorized Ford dealers, also breached the implied warranty of merchantability when it unsuccessfully attempted to repair and/or replace the defects on the Class Vehicles.

103.     As a direct and proximate result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.   In addition, as a result of the Transmission Defect, Plaintiff and Class members were harmed and suffered actual damages because of the probable reasonable certainty that the transmissions will fail prematurely.

104.     Defendant's misconduct damaged Plaintiff and Class members, and, therefore, they are entitled to recover actual damages, consequential damages, diminution in value, costs, attorneys' fees, and/or other relief deemed appropriate.

**THIRD CAUSE OF ACTION**
**(Breach of Express Warranty)**
**(On behalf of the Illinois Subclass)**
**(Illinois Commercial Code § 2-313)**

105.     Plaintiff repeats and realleges paragraphs one (1) through eighty (80), with the same force and effect as though fully set forth herein.

22

106.    Plaintiff brings this cause of action individually and on behalf of the Illinois Sub-Class.

107.    Defendant provided express warranties to all purchasers and lessees of the Class Vehicles,

108.    Ford provided all purchasers and lessees of the Class Vehicles with a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with the purchase or lease of the Class Vehicles.  In this "Bumper to Bumper" Limited Warranty, Ford expressly warranted that it would replace or repair, free of charge, all parts of the vehicle that malfunctioned or failed during normal use during the warranty period due to a manufacturing defect if the vehicle was properly operated and maintained and taken to a Ford dealer for repairs during the warranty period.  Under this warranty, Ford promised to honor this warranty for either three years or 36,000 miles, whichever came first.

109.    Additionally, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover the powertrain components listed under the warranty.   Transmission components are included in this warranty for five years or 60,000 miles, whichever comes first (since updated to seven years or 100,000 miles).

110.    Defendant's representations that the Class Vehicles' transmissions would conform to the transmission's descriptions, as well as Defendant's promises to repair or replace defective transmissions, became part of the basis for Plaintiff's and Class members' decisions to purchase and/or lease of the Class Vehicles.

111.    Defendant breached the express warranty by selling and leasing Class Vehicles with defective transmissions, which required repair or replacement within the warranty period; refusing to honor the warranty by repairing or replacing the transmission or its parts at no cost,

23

instead charging for the repairs or replacements; and pretending to repair the transmission by replacing it with the same defective transmission and parts in order to ensure that the eventual transmission failure occurred outside the warranty period.

112.    Defendant had reasonable opportunities to fix its breach, specifically when Plaintiff and Class members brought their vehicles in to dealerships for repairs of the transmission.

113.    As a direct and proximate result of Defendant's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered damages in an amount to be determined at trial for their loss of money, property, and/or value of their Class Vehicles. In addition, as a result of the Transmission Defect, Plaintiff and Class members were harmed and suffered actual damages because of the probable reasonable certainty that the transmissions will fail prematurely.

114.    Defendant's misconduct damaged Plaintiff and Class members, and, therefore, they are entitled to recover actual damages, consequential damages, diminution in value, costs, attorneys' fees, and/or other relief deemed appropriate.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**(On behalf of the Nationwide Class and Illinois Subclass)**

115.    Plaintiff repeats and realleges paragraphs one (1) through eighty (80), with the same force and effect as though fully set forth herein.

116.    Plaintiff brings this cause of action individually and on behalf of the Nationwide Class and the Illinois Subclass.

117.    By virtue of sale and/or lease of Class Vehicles, Defendant has unlawfully and unjustly retained a benefit for its failure to disclose known defects and material

24

misrepresentations regarding defects with the Class Vehicles' transmissions. Despite the fact that the vehicles were purchased through Defendant's dealerships, the profits flow directly back to Defendant.

118. Defendant's failure to disclose known defects and material misrepresentations regarding the Class Vehicles, unlawfully and unfairly impoverished Plaintiff and Class members because Plaintiff and Class members paid more for the Class Vehicles than they would have if they had known about the defects and the Class Vehicles require constant and costly repairs that unjustly benefit Defendant.

119. The retention of the unlawfully collected monies from Plaintiff and Class members violates the fundamental principles of justice, equity, and good conscience.

120. Defendant has obtained money to which it is not entitled and interest on that money, under these circumstances, equity and good conscience require that Defendant return the money with interest to Plaintiff and Class members.

121. As a direct and proximate result of the foregoing, Plaintiff and Class members have suffered and will continue to suffer actual damages.

**FIFTH CAUSE OF ACTION**
**(Fraudulent Concealment)**
**(On behalf of the Nationwide Class and Illinois Subclass)**

122. Plaintiff repeats and realleges paragraphs one (1) through eighty (80), with the same force and effect as though fully set forth herein.

123. Plaintiff brings this cause of action individually and on behalf the Nationwide Class and the Illinois Subclass.

124. Defendant knew of the defective condition of the PowerShift Transmission because Defendant continued to manufacture, distribute, and sell the PowerShift Transmission in

25

the Class Vehicles after receiving substantial complaints and notices of systematic product failure due to the dangerous or defective condition.

125.     Defendant had an affirmative duty to disclose the defective condition of the PowerShift Transmissions because it was in a superior position to know the true state of the defective PowerShift Transmissions.  Defendant knew of the defective and dangerous condition and the condition was not easily discoverable by consumers.

126.     Defendant breached its duty by failing to disclose the condition.  Defendant omitted an existing fact about the PowerShift Transmissions when it failed to disclose information regarding the PowerShift Transmissions' dangerous and defective condition.  The omission rendered Defendant's representations regarding the PowerShift Transmissions false because the PowerShift Transmissions were in fact defective.

127.     The omission is material because the defective condition poses a serious safety issue to the owners of the PowerShift Transmissions and to the public.

128.     Defendant intended that purchasers and lessees would rely on its omissions regarding safety, reliability, and resale value of the PowerShift Transmissions to bolster sales.

129.     Plaintiff and Class members were not aware of the defective condition and could not reasonable have discovered the defective condition.

130.     Plaintiff and Class members justifiably relied on Defendant's misrepresentations and omission in that Plaintiff and the Class members paid more for the PowerShift Transmissions than the PowerShift Transmissions would have been worth had the Defendant disclosed the defective condition, or  they would have purchased different vehicles altogether.

131.     Plaintiff and Class members had the right to rely on Defendant's omissions that created the false impression that the Class Vehicles were safe and reliable based on reasonable

consumer expectations that the PowerShift Transmissions would not be designed such that they fail under normal conditions of use or would be substantially certain to fail before the end of their useful life.

132.    As a direct and proximate result of the foregoing, Plaintiff and Class members were harmed by Defendant's misrepresentations and omissions regarding the dangerous and defective condition of the PowerShift Transmissions.    Plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually, and on behalf all others similarly situated, requests that the Court enter judgment against Defendant, as follows:

a.    An order certifying the proposed Class and Sub-Classes, designating Plaintiff as a named representative of the Class, and designating the undersigned as Class Counsel;

b.    An order prohibiting Defendant from additional deceptive distribution, sales, and lease practices with regard to Class Vehicles, and prohibiting Defendant from selling Class Vehicles with the misleading information

c.    An order compelling Defendant to remove and replace Plaintiff's and Class members' transmissions with a suitable alternative; to provide Class members with a replacement transmission that does not contain defects; and/or to modify its warranty, in a manner deemed appropriate by the Court, to cover the injury alleged and to notify all Class members that such warranty has been modified;

d.    An award to Plaintiff and Class members for compensatory, exemplary, and statutory damages, including interest, and including the additional purchase cost of the PowerShift Transmission option, in an amount to be proven at trial;

e.    A declaration that Defendant must yield, for the benefit of the Class, all or part of the unjust profits it received as a result of the sale or lease of the Class Vehicles, or make full restitution to Plaintiff and Class members;

f.    An award of attorneys' fees and costs, as allowed by law;

g.    An award of pre-judgment and post-judgment interest, as provided by law; and

h.    Such other relief as the Court may deem appropriate under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable.

Plaintiff DANIELLE ANDERSON, individually, and on behalf of all other similarly situated individuals,

By:  s/ Thomas A. Zimmerman, Jr.
          Thomas A. Zimmerman, Jr. (IL #6231944)
          *tom@attorneyzim.com*
          Amelia S. Newton (IL #6190594)
          *amy@attorneyzim.com*
          Jordan M. Rudnick (IL #6230167)
          *jordan@attorneyzim.com*
          Matthew C. De Re (IL #6317913)
          *matt@attorneyzim.com*
          Nickolas J. Hagman (IL #6317689)
          *nick@attorneyzim.com*
          ZIMMERMAN LAW OFFICES, P.C.
          77 West Washington Street, Suite 1220
          Chicago, Illinois 60602
          (312) 440-0020 telephone
          (312) 440-4180 facsimile
          www.attorneyzim.com

Counsel for Plaintiff and the Class

28